No. 02-069

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 115

STATE OF MONTANA,

Plaintiff and Respondent,

v.

CORY MINEZ,

Defendant and Appellant.

APPEAL FROM:     District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DC 2000-30,
Honorable C. B. McNeil, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender Office, Helena, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Pamela P. Collins, Assistant
Attorney General, Helena, Montana

Robert J. Long, County Attorney; Mitchell A. Young, Deputy County
Attorney, Polson, Montana

Submitted on Briefs:  April 25, 2003

Decided:  May 4, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1      Cory Minez (Minez) was charged by information with the offenses of criminal production or manufacture of dangerous drugs, criminal possession of dangerous drugs, and possession or use of property subject to criminal forfeiture.  The District Court for the Twentieth Judicial District, Lake County, denied Minez's motion to suppress certain evidence.  Following trial by jury, Minez was found guilty of all counts except possession or use of property subject to criminal forfeiture.  Minez appeals.  We affirm.

¶2      The following issues are raised on appeal:

¶3      1. Did the District Court improperly deny Minez's motion to suppress?

¶4      2. Was Minez unlawfully punished twice for the same conduct when he was convicted both of criminal production of dangerous drugs and the included offense of criminal possession of dangerous drugs arising out of the same transaction?

### FACTUAL AND PROCEDURAL BACKGROUND

¶5      On March 9, 2000, Craige Couture (Couture), an agent of the Northwest Drug Task Force (NDTF), obtained a warrant to search the residence of Cory Minez.  Minez was believed to be residing in his father's home on White Coyote Road in Arlee, Montana, and manufacturing methamphetamine.  The application for the warrant was based upon the following facts: On October 14, 1999, Couture learned that a confidential informant (hereinafter referred to as  CI 15) had advised Darren Incashola (Officer Incashola) of the St. Ignatius Police Department that Minez and others were manufacturing methamphetamine at his father's residence on White Coyote Road in Arlee, Montana.  According to Officer

Incashola, CI 15 had been involved in the methamphetamine operation, wished to disassociate from it, and had provided reliable information to law enforcement in the past.

¶6    In December 1999, Jim Fargher (Fargher), a manager at a local grocery store, informed police that Minez was routinely seen purchasing ephedrine tablets, and was believed to be part of a group of individuals who regularly shoplifted boxes of ephedrine from the store. Fargher indicated that he intended to install a surveillance camera in the aisle where the ephedrine was located. On January 13, 2000, Minez was videotaped stealing ephedrine.

¶7    In Ronan, Montana, a hardware store clerk allegedly overheard Minez discussing a propane barbeque with his companion. According to the clerk, Minez stated, "this barbeque is the Cadillac of cookers. We could cook some really good sh[. . .]." Couture attested in the application for the warrant that propane barbeques are known to be used in methamphetamine production.

¶8    A hardware store clerk in St. Ignatius also positively identified Minez and reported that Minez had been purchasing acetone regularly over the course of several months. The clerk had become suspicious of Minez because he did not appear to be connected to a business requiring such large amounts of acetone, and therefore obtained a description and license plate number of the vehicle Minez was driving. On later inspection, the vehicle was found to be registered to Minez's father.

¶9    On February 24, 2000, Couture spoke to a confidential informant (hereinafter referred to as CI 14) who reported that Minez had been manufacturing methamphetamine at his

father's house on White Coyote Road for approximately one year. CI 14 additionally informed Couture that Minez used glassware and scales in the manufacturing operation which had been stolen from a nearby elementary school.

¶10 On March 10, 2000, Couture, along with a team of NDTF agents, effected a search of the Minez residence. Upon entry, Couture observed an odor which intensified as he descended to the downstairs bedroom where Minez was located. In their search of the home and surrounding premises, NDTF agents uncovered methamphetamine, as well as equipment and precursors used to manufacture methamphetamine. They further discovered glassware and scales consistent with those stolen from the elementary school. Minez was subsequently arrested and charged with criminal possession of dangerous drugs, use or possession of property subject to criminal forfeiture, and criminal production or manufacture of dangerous drugs.

¶11 On March 22, 2000, Minez appeared before the District Court and pleaded not guilty to all charges. During the course of discovery, Minez requested disclosure of the identities of the confidential informants, CI 14 and CI 15. The State identified CI 15 as Roxanne Ambrose (Ambrose), a former girlfriend of Minez, but refused to disclose the identity of CI 14. Defense counsel subsequently arranged a meeting with Ambrose, who denied giving the information attributed to her in the search warrant application. Minez felt certain that CI 14 would similarly deny the allegations attributed to him/her, and renewed his request for disclosure of the identity of CI 14, which the State again denied.

4

¶12 On December 8, 2000, Minez brought a motion in District Court to disclose the identity of CI 14. The State responded that CI 14 was still providing information to the State and was expected to continue to do so indefinitely. The District Court thereafter denied Minez's motion for disclosure.

¶13 On August 9, 2001, Minez brought a motion to suppress the evidence obtained as a result of the search. Minez argued that the search warrant was overly broad and premised upon the inaccurate or false statements of the two confidential informants. He maintained that, after excising the informants' statements from the warrant, insufficient facts remained to support probable cause for the search. Despite his contentions, Minez offered no supporting affidavit or sworn testimony in support of his motion and did not request a hearing on the matter until filing his reply brief forty-eight days later. On September 28, 2001, the District Court denied Minez's motion to suppress on the merits, and additionally denied his request for a hearing as untimely.

¶14 On the same day as he filed his motion to suppress, Minez brought a motion in District Court requesting a jury instruction that a defendant may not be convicted of more than one offense if one offense is included in the other, or if one offense consists only of a conspiracy or other form of preparation to commit the other. The State filed its response to the motion on August 24, 2001. In reply, Minez advised the court that "further briefing and argument in this case and a ruling on the motion by the court are premature until the presentation of evidence in the trial of this matter and whether or not a jury convicts the defendant of more than one charge in a trial. The defendant would request the court allow

5

further briefing and argument after the presentation of evidence at trial in this matter." The District Court offered no ruling on the motion, and Minez never revisited the issue.

¶15 Minez proceeded to trial by jury on October 25, 2001. On October 26, 2001, the jury returned a guilty verdict as to the charges of criminal production or manufacture of dangerous drugs, criminal possession of dangerous drugs, and criminal possession of drug paraphernalia. However, the jury found Minez was not guilty of the use or possession of property subject to criminal forfeiture. Minez was subsequently sentenced to ten years in the Montana State Prison, with five years suspended, for the offense of criminal production or manufacture of dangerous drugs, five years in the Montana State Prison for the offense of criminal possession of dangerous drugs, and six months in county jail for the lesser included offense of criminal possession of drug paraphernalia. Each sentence was to run concurrently. From the commitment and judgment, Minez appeals.

## STANDARD OF REVIEW

¶16 We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of the law is correct. *State v. Tackitt*, 2003 MT 81, ¶ 11, 315 Mont. 59, ¶ 11, 67 P.3d 295, ¶ 11. In our review we pay great deference to a court's determination that probable cause existed and draw every reasonable inference possible to support that determination. *State v. Grams*, 2002 MT 188, ¶ 10, 311 Mont. 102, ¶ 10, 53 P.3d 897, ¶ 10.

6

¶17 Finally, we review a district court's denial of an evidentiary hearing on the veracity of statements in the search warrant application for clear abuse of discretion. *State v. Feland* (1994), 267 Mont. 112, 114, 882 P.2d 500, 501.

## DISCUSSION

¶18 **Did the District Court improperly deny Minez's motion to suppress?**

¶19 Minez challenges the District Court's failure to conduct a hearing and enter findings concerning his motion to suppress evidence obtained as a result of the March 10, 2000 search of his home. The State responds that no hearing was required under the standards established by the United States Supreme Court in *Franks v. Delaware* (1978), 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667, and as modified by this Court in *State v. Worrall*, 1999 MT 55, 293 Mont. 439, 976 P.2d 968, because Minez failed to make a substantial preliminary showing that a false statement was included in the application for the search warrant. However, assuming *arguendo* that a hearing was required, the State maintains that probable cause continues to exist based upon the remaining unexcised portions of the warrant.

¶20 In *Franks*, 438 U.S. at 156, 98 S.Ct. at 2676, 57 L.Ed.2d at 672, the United States Supreme Court determined that a criminal defendant may challenge the truthfulness of the factual statements made in an application for a search warrant by showing that the application contains false statements, and that such statements were made knowingly, intentionally, or with a reckless disregard for the truth. If the defendant makes such a showing, and the misstatement was material to finding probable cause, then a hearing must be held at the defendant's request. The defendant then has an opportunity to prove, by a

7

preponderance of the evidence, the allegation of untruthfulness or reckless disregard. Once proved, the offending material is excised, and the application is reviewed to determine whether probable cause continues to exist. If not, the search warrant must be voided, and the fruits of the search excluded. *Franks*, 438 U.S. at 155-56, 98 S.Ct. at 2676, 57 L.Ed.2d at 672.

¶21    To make a substantial preliminary showing of an intentional falsehood under *Franks*, a defendant must provide more than mere conclusory statements. Rather, under *Franks*, a defendant is required to make an offer of proof containing affidavits, sworn statements or other reliable witness statements which tend to prove that false statements in the application were deliberately made. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d. at 682. We adopted the *Franks* approach in *State v. Sykes* (1983), 194 Mont. 14, 663 P.2d 691 (overruled in part on other grounds by *State v. Long* (1985), 216 Mont. 65, 67, 700 P.2d 153, 155), and affirmed its use in *State v. Mosley* (1993), 260 Mont. 109, 116, 860 P.2d 69, 73.

¶22    In *Worrall*, ¶ 34, we modified our use of the *Franks* procedure only to the extent that a defendant no longer needed to show that the person providing the false information in the application for a search warrant did so knowingly, intentionally, or with a reckless disregard for the truth before those statements could be excised. Rather, a defendant challenging the veracity of information contained in a search warrant application need only make a substantial preliminary showing that the application or affidavit in support of the search warrant included false information. *Worrall*, ¶ 32.

8

¶23    In *Feland*, 267 Mont. at 115, 882 P.2d at 501, we stated that "[a] substantial preliminary showing of a deliberate falsehood or reckless disregard for the truth requires more than a conclusory statement. . . . The defendant must make an offer of proof containing 'affidavits, sworn statements or other reliable witness statements which tend to prove that false statements in the application were deliberately made.'" (Citations omitted.)  Although this Court's holding in *Worrall* eliminated the need to establish the affiant's intent in making the search warrant application, it did not obviate the defendant's duty to make a substantial preliminary showing that false information was in fact included in the application or affidavit in support of the search warrant. *Worrall*, ¶ 32.  As our cases predating *Worrall* make clear, a substantial preliminary showing may be made by providing an offer of proof containing affidavits, sworn testimony or other reliable witness statements which tend to prove the falsity of the information contained within the warrant application.  Only if the defendant makes such a showing is a hearing required.  *Worrall*, ¶ 32.

¶24    Here, Minez's motion to suppress was premised upon his bald assertions that Roxanne Ambrose had denied making the statements attributed to her in the application for the search warrant and that, due to the State's refusal to disclose the identity of CI 14, Minez was "forced to assume" that CI 14 either did not exist or had "been misquoted like Ambrose." However, Minez provided no affidavit or sworn testimony in support of the motion, and did not request a hearing on the matter until filing his reply brief, forty-eight days after filing the initial motion.  Given the complete lack of evidence in support of Minez's challenge to the veracity of the statements contained within the application for the search warrant, and the

9

untimeliness of his request for hearing, we conclude that Minez failed to make a substantial preliminary showing of falsity as required by *Worrall*. Accordingly, no hearing was required and the District Court did not err in denying Minez's motion to suppress without a hearing.

¶25 **Was Minez unlawfully punished twice for the same conduct when he was convicted both of criminal production of dangerous drugs and the included offense of criminal possession of dangerous drugs arising out of the same transaction?**

¶26 Minez argues that his convictions for both criminal possession and criminal production of dangerous drugs violates constitutional protections against double jeopardy because each offense arises from the same act or transaction, and either includes or results in the other. In response, the State asserts that Minez abandoned his objection in District Court, and therefore waived this issue on appeal. We agree.

¶27 On August 9, 2001, Minez brought a motion in District Court requesting that the jury be instructed that a defendant may not be convicted of multiple offenses if one offense is included in the other, or if one offense consists only of a conspiracy or other form of preparation to commit the other. The State responded to Minez's motion and on September 26, 2001, Minez filed his reply brief stating that "further briefing and argument in this case and a ruling by this court are premature until presentation of evidence in the trial of this matter and whether or not a jury convicts the defendant of more than one charge in a trial. The defendant would request the court allow further briefing and argument after the presentation of evidence at trial in this matter." The District Court did not thereafter rule on Minez's motion and Minez never returned to the issue.

10

¶28 Section 46-16-410(3), MCA, provides that "[a] party may not assign as error any portion of the instructions or omission from the instructions unless an objection was made specifically stating the matter objected to, and the grounds for the objection, at the settlement of instructions." Generally, we will not review jury instructions where the party asserting error did not object to the instructions at the time they were proposed. *State v. Rinkenbach*, 2003 MT 348, ¶ 11, 318 Mont. 499, ¶ 11, 82 P.3d 8, ¶ 11.

¶29 In this case, Minez abandoned his request for jury instructions concerning double jeopardy in his September 26, 2001 reply brief when he acknowledged that a court ruling was premature and requested additional briefing and argument following the presentation of evidence. Minez did not thereafter return to the issue, nor did he raise a double jeopardy objection at the settling of jury instructions or object to the verdict form in which the criminal possession and criminal production offenses were listed as independent counts.

¶30 This notwithstanding, Minez asserts that conviction of both offenses for production and possession violates constitutional protections against double jeopardy because possession of dangerous drugs is the inevitable consequence of manufacturing dangerous drugs. However, aside from his claimed instructional errors, Minez did not offer such a general objection at trial. Absent plain error, allegations that constitutional rights have been violated cannot be raised for the first time on appeal. *State v. Huerta* (1997), 285 Mont. 245, 260-61, 947 P.2d 483, 492-93. Although we may discretionarily review claimed errors–even absent timely objection–which implicate a defendant's fundamental constitutional rights under a plain error review, Minez has not demonstrated, or even argued, that his asserted

11

instructional errors constitute fundamental unfairness amounting to plain error. Consequently, we decline to invoke plain error review.

¶31 Furthermore, we have stated that "acquiescence in error takes away the right of objecting to it." *State v. Brown*, 1999 MT 339, ¶ 19, 297 Mont. 427, ¶ 19, 993 P.2d 672, ¶ 19; *see also* § 1-3-207, MCA. Having abandoned his constitutional objections at trial, Minez is precluded from now raising them on appeal.

¶32 Affirmed.

/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA O. COTTER