DA 10-0426

IN THE SUPREME COURT OF THE STATE OF MONTANA

2012 MT 31

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

RICHARD EDWARD COVINGTON,

       Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 08-0526
Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Colin M. Stephens, Colin Gerstner, Smith & Stephens, P.C., Missoula, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; C. Mark Fowler, Assistant Attorney General, Helena, Montana

          Scott Twito, Yellowstone County Attorney; Rod Souza, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  December 7, 2011
Decided:  February 8, 2012

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1     Richard Covington (Covington) appeals his convictions for robbery and deliberate homicide in the Thirteenth Judicial District, Yellowstone County.  We affirm.

¶2     Covington raises the following issues:

¶3     *Issue 1: Whether the existence of facts, including a prior conviction, that trigger the application of the sentence enhancement process of § 46-18-219(1)(b)(iv), MCA, must be submitted to the jury?*

¶4     *Issue 2: Whether the District Court should have suppressed evidence obtained from Covington's binder and notebooks?*

¶5     Patty Munson (Munson) walked from her office to her car in Billings on April 10, 2007.  She heard a thumping noise behind her.  Munson turned in time to see Covington wearing a dark mask and ski jacket.  She screamed.  Covington tackled Munson.  He held a knife to Munson's neck, pressed it to her throat, and threatened to kill Munson unless she remained silent.  Covington grabbed Munson's purse and fled.

¶6     Munson's screaming caught the attention of workers on a nearby rooftop.  The workers saw Covington use the alleyway entrance of the Billings Brewpub.  The Billings Police Department (Police) recovered various items from the Brewpub bathroom that evening.  These items included a makeshift panty hose mask with holes cut for eyes, a knife, handcuffs, and pepper spray.  Police conducted a DNA test on the recovered panty hose mask.

2

¶7    Detective Blake Richardson (Richardson) suspected that Covington may have committed the robbery based on Richardson's previous encounters with Covington. Covington lived in the area of the robbery. Covington previously had committed a robbery with a knife. Covington also matched the physical description provided by Munson.

¶8    Police compared the DNA from the panty hose mask to a DNA sample that Covington voluntarily had provided in a contemporaneous, and unrelated, homicide investigation for the deaths of Norman Leighton, Patty Hubbert, and Gerald Morris. The homicide investigation revealed that Covington possessed intimate knowledge, not publicly available, of the circumstances surrounding the deaths of Leighton and Hubbert. Police also identified Covington as the last person seen with Morris before his death. Police accordingly considered Covington a person of interest for the homicides.

¶9    A laboratory test revealed that the DNA from the panty hose mask matched Covington's DNA profile. Police used the DNA match to secure a search warrant of Covington's residence. Police sought the search warrant to locate evidence of the robbery, and specifically, items from Munson's purse. These items included coins and distinct postage stamps. Police also knew from investigating Covington's activity that he made frequent pawn transactions in the Billings area. Police accordingly sought pawn receipts that demonstrated Covington purchased, and owned, the items recovered after the robbery in the bathroom of the Brewpub. The warrant affidavit also sought diaries, ledgers, and other documents of criminal activity. The affidavit included a statement that, in Detective

3

Richardson's experience, people sometimes keep written records of their criminal activity. The District Court issued the warrant.

¶10   Police executed the warrant and searched Covington's residence. They seized postage stamps, a handwritten note that discussed the recovery of a purse, and a pair of dark panty hose. Police also located items relevant to the triple homicide investigation. These items included a loose-leaf binder and several notebooks. Police found homicide statutes and rules of evidence within the binder and notebooks. The binder and notebooks also contained notes and timelines relevant to the homicide investigation.

¶11   Police did not seize immediately the binder and notebooks. They instead sought a second search warrant. The affidavit for that warrant specifically noted what the police saw within the binder and notebooks during the original search. Police later returned to Covington's residence with a warrant to seize the binder and notebooks as evidence pertinent to the homicide investigation. Covington moved to suppress the binder and notebooks seized from his residence. The District Court denied his motion.

¶12   The State charged Covington with numerous offenses. These charges included, in part, the robbery of Munson and the homicides of Norman Leighton, Patty Hubbert, and Gerald Morris. Covington's case proceeded to trial. The jury convicted Covington on all charges. The District Court noted at sentencing that Covington previously had been convicted of robbery in 1981 and 2009. The District Court further noted that § 46-18-219, MCA, requires generally that a person being sentenced for certain violent felonies, and who has two previous violent felony convictions, must be given a life sentence without parole.

4

Section 46-18-219, MCA, includes robbery among the violent felonies enumerated within the statute. The court accordingly issued a life sentence without the possibility of parole based on Covington's two previous robbery convictions. Covington appeals.

STANDARD OF REVIEW

¶13 We exercise plenary review of constitutional questions. *State v. Stock,* 2011 MT 131, ¶ 16, 361 Mont. 1, 256 P.3d 899. We review de novo a district court's interpretation of the Montana Constitution. *Stock*, ¶ 16. We also review for clear error a district court's findings of fact. And we review a district court's conclusions of law for correctness to determine whether it correctly ruled on a motion to suppress evidence. *State v. Pearson,* 2011 MT 55, ¶ 11, 359 Mont. 427, 251 P.3d 152. This Court conducts plenary review of the district court's application of the law. *Pearson,* ¶ 11.

DISCUSSION

¶14 *Issue 1: Whether the existence of facts, including a prior conviction, that trigger the application of the sentence enhancement process of § 46-18-219(1)(b)(iv), MCA, must be submitted to the jury?*

¶15 Covington argues that the right to a jury trial requires that any fact used to enhance a sentence beyond a statutory maximum, including prior convictions, must be submitted to the jury. Covington concedes the United States Supreme Court has rejected his interpretation of the right to a jury trial under the Sixth Amendment to the United States Constitution. *Almendarez-Torres v. U.S.*, 523 U.S. 224 (1998). The Court decided in *Almendarez-Torres*, with a 5-4 vote, that a court may determine that a prior conviction exists to enhance a

5

sentence beyond the statutory maximum without infringing on a defendant's right to a jury trial. *Almendarez-Torres*, 523 U.S. at 235. Covington contends, however, that the Court has called into doubt *Almendarez-Torres* in subsequent decisions.

¶16 Covington primarily bases his argument on Justice Thomas's concurrence in *Apprendi v. New Jersey,* 530 U.S. 466, 520 (2000) (Thomas, J., concurring). The Court determined in *Apprendi* that the right to a jury trial under the Sixth Amendment to the United States Constitution dictated that any fact used to enhance a sentence beyond the statutory maximum must be found by the jury rather than the court. *Apprendi*, 530 U.S. at 490. Justice Thomas, who joined the majority in *Almendarez-Torres*, also joined the majority in *Apprendi*. He wrote a concurrence in *Apprendi*, however, in which he stated that *Almendarez-Torres*—a case in which he had cast the decisive fifth vote—had been decided incorrectly. *Apprendi*. 530 U.S. at 520 (Thomas, J., concurring).

¶17 Covington further argues that *Apprendi* itself called into doubt *Almendarez-Torres*'s viability. *Apprendi*, 530 U.S. at 489-90. The Court in *Apprendi* stated that "it is arguable that *Almendarez-Torres* was incorrectly decided" and also noted "that a logical application of our reasoning today should apply if the recidivist issue were contested." *Apprendi*, 530 U.S. at 489-90. The Court declined, however, to overturn *Almendarez-Torres*, stating, "[the defendant] does not contest the decision's validity and we need not revisit it for purposes of our decision today. . . ." *Apprendi*, 530 U.S. at 490.

¶18 The State counters that *Alemndarez-Torres* remains good law. The United States Supreme Court has had numerous opportunities to revisit *Alemndarez-Torres,* and

6

continually has denied *certiorari* when a party raises the issue of whether a jury must make the factual determination of a prior conviction if that conviction enhances the defendant's sentence. *See, e.g., Rangel-Reyes v. United States*, 547 U.S. 1200 (2006). The State specifically notes that every federal court of appeals, with the exception of the Federal Circuit, has addressed this issue after the Court's decisions in *Alemndarez-Torres* and *Apprendi*. *See, e.g., United States v. Pacheco-Zepeda,* 234 F.3d 411 (9th Cir. 2001). Each of those appellate courts has recognized the continued viability of *Almendarez-Torres. See, e.g., United States v. Marseille,* 377 F.3d 1249 (11th Cir. 2004).

¶19    Covington concedes that *Almendarez-Torres* remains good law. Covington argues, however, that Article II, § 24 and § 26 of the Montana Constitution provide a stronger right to a jury trial than does the Sixth Amendment to the United States Constitution. *Woirhaye v. Montana Fourth Judicial Dist. Court,* 1998 MT 320, ¶ 14, 292 Mont. 185, 972 P.2d 800. He contends that this heightened right requires that a jury determine whether a prior conviction exists before a defendant may be sentenced beyond the statutory maximum based on that prior conviction. Covington highlights the interplay between *Alemndarez-Torres* and *Apprendi* to exemplify the serious doubts over whether a court's determination of a prior conviction infringes on the Sixth Amendment right to a jury trial. He suggests that the heightened right provided by Article II, § 24 and § 26 of the Montana Constitution undoubtedly requires that a prior conviction be submitted to a jury. We disagree.

¶20    The Montana Constitution may provide greater protection, in certain circumstances, than the United States Constitution. *State v. Hardaway,* 2001 MT 252, ¶ 31, 307 Mont. 139,

7

36 P.3d 900. For example, this Court specifically has determined that the Montana Constitution provides a person with an enhanced right to a jury trial. *Woirhaye*, ¶ 14. The Court also has determined, however, that a defendant must establish sound and articulable reasons that the Montana Constitution affords greater protection for a particular right. *See State v. Rosling,* 2008 MT 62, ¶ 66, 342 Mont. 1, 180 P.3d 1102.

¶21 A party may establish sound and articulable reasons when it demonstrates that the Montana Constitution contains unique language, not found in its federal counterpart, that dictates this Court should recognize the enhanced protection. *See State v. Ellis,* 2009 MT 192, ¶ 22, 351 Mont. 95, 210 P.3d 144 (noting that the Montana Constitution provided an enhanced right to privacy in light of the Constitution's expressed, rather than implicit, right to privacy); *see also Buhmann v. State,* 2008 MT 465, ¶ 69, 348 Mont. 205, 201 P.3d 70 (determining that the Montana Constitution did not provide enhanced rights for regulatory takings due to the absence of any language in Article II, § 29 that specifically addressed regulatory takings). A party also may establish, through convention transcripts and committee reports, that the delegates to the Montana Constitutional Convention intended to provide the alleged, broader protection. *See State v. Goetz,* 2008 MT 296, ¶¶ 33-35, 345 Mont. 421, 191 P.3d 489 (determining that the Montana Constitution provides enhanced protection against electronic monitoring due to the delegates' expressed fear, as stated in the convention records, of technology's infringement on individual privacy). A party further may illustrate his claim for broader protection by establishing that the right must not be read in isolation, but rather, in conjunction with rights that are uniquely Montanan. *See State v.*

8

*Bullock*, 272 Mont. 361, 383, 901 P.2d 61, 75 (1995) (determining that the Montana Constitution provided additional protection against illegal searches and seizures because Article II, § 11 must be read in conjunction with the expressed right of privacy in Article II, § 10). We accordingly will undertake a unique, state constitutional analysis only when the defendant has satisfied his burden of proof that a unique aspect of the Montana Constitution, or the background material related to the provision, provides support for the greater protection that he seeks to invoke.

¶22 For example, the Court addressed the constitutionality of a statute that provided that a person, charged with a misdemeanor and tried in justice court, could receive only one jury trial. *Woirhaye*, ¶ 11. This interpretation left a defendant who had appealed to the district court for trial de novo with one bench trial and one jury trial. This Court agreed that this interpretation of the statute violated the defendant's right to a jury trial under the Montana Constitution. *Woirhaye*, ¶ 26.

¶23 The United States Supreme Court previously had determined that a two tiered, criminal justice system did not infringe on an individual's right to a jury trial under the Sixth Amendment to the United States Constitution when it provided only one jury trial. *Woirhaye*, ¶ 12, citing *Ludwig v. Massachusetts*, 427 U.S. 618 (1976). The Court in *Woirhaye* examined the history and text of Montana's right to a jury trial to determine that the Montana Constitution provided greater protection for an accused's right to a jury trial than the United States Constitution provided. *Woirhaye*, ¶ 17.

9

¶24 The Court cited two reasons to support its determination that the statute implicated greater protection under the Montana Constitution. First, the delegates to the Montana Constitutional Convention sought to provide more expansive rights to a jury trial for misdemeanor defendants. *Woirhaye,* ¶ 17. Delegates to the 1972 Constitutional Convention expressed a desire that even misdemeanor defendants must be found guilty by a unanimous verdict rather than the two-thirds system adopted in the 1889 Constitution. Second, defendants who appealed from a guilty verdict in justice court were entitled only to trial de novo in district court. The statute failed to provide defendants with a right to appeal any specific legal or evidentiary issues. For example, the question of whether a jury had been selected fairly in justice court could not be reviewed in district court. *Woirhaye,* ¶ 22. As a result, this system could deprive a person from receiving a fair jury trial at justice court at the same time that it deprived a defendant of any jury trial in the district court. *Woirhaye,* ¶ 22.

¶25 Covington has failed to provide any reason for us to determine that the Montana Constitution offers some greater protection on the issues that must be found by the jury than the United States Supreme Court determined in *Alemndarez-Torres* that the United States Constitution requires to be found by a jury. Covington has failed to articulate how his claim implicates any enhanced right afforded under the Montana Constitution when the District Court determined the existence of his prior robbery conviction. He cites nothing in the background materials to indicate that the delegates to Montana's Constitutional Convention contemplated some enhanced protection for the narrow issue presented here. Covington provides no argument as to what injustice would be prevented by requiring a jury to

determine the existence of a prior conviction in order for the court to use the prior conviction for sentence enhancement purposes to § 46-18-219, MCA. Covington further fails to articulate what safeguard a jury provides to the criminal justice system when the fact of a prior conviction is at issue. Simply put, Covington failed to meet his burden of establishing that the District Court infringed on an enhanced right to a jury trial under the Montana Constitution.

¶26 *Issue 2: Whether the District Court should have suppressed evidence obtained from Covington's binder and notebooks?*

¶27 A search warrant application must state facts sufficient to show probable cause to believe that an offense has been committed and that evidence of the crime may be found in the place to be searched. *State v. Tucker*, 2008 MT 273, ¶ 16, 345 Mont. 237, 190 P.3d 1080. We consider the totality of the circumstances to determine whether probable cause exists. *Tucker*, ¶ 16. This test requires a court to make a common sense determination, based on all evidence within the warrant application, of whether a fair probability exists that contraband or evidence of a crime will be found in a particular place. *Tucker*, ¶ 16.

¶28 Covington argues that the search warrant affidavit lacked sufficient information to establish probable cause for the officers to review the loose-leaf binder and notebooks. The search warrant affidavit stated that, in Detective Richardson's experience, people "sometimes keep diaries, ledgers, and other documents of there [sic] criminal activity." Covington argues that this statement fails to establish probable cause of the existence of evidence related to a crime in the binder and related documents.

11

¶29 Covington cites *People v. Franks,* 700 P.2d 415 (Cal. 1985). Law enforcement searched the defendant's residence pursuant to a search warrant. *Franks,* 700 P.2d at 419. The search warrant affidavit stated that the police would seize, among other items, diary notations. *Franks,* 700 P.2d at 419. The search yielded three notebooks that contained incriminating information. *Franks,* 700 P.2d at 418. The defendant moved to suppress the notebooks on the grounds that the search warrant affidavit lacked probable cause to justify a search of the notebooks. The California Supreme Court agreed. The warrant's vague reference to diary notations constituted boilerplate language included in all search warrants. *Franks,* 700 P.2d at 423. This type of boilerplate language only encouraged general searches and placed no meaningful restrictions on what could be searched and seized. *Franks,* 700 P.2d at 423. The court suppressed the evidence due to the search warrant affidavit's lack of any alleged facts that provided probable cause to search the notebooks.

¶30 Covington misplaces his reliance on *Franks*. The officers may have lacked probable cause, at the time of obtaining the first warrant for Covington's residence, to search the writings contained within the notebooks and binder. Officers unquestionably possessed probable cause, however, to search for the stamps from Munson's purse. Officers also possessed probable cause to locate pawn receipts. Pawn receipts and stamps could be located within the binder and notebooks. Officers reasonably could look through the binder and notebooks based on the first warrant for these particularly described items. The remaining contents of the binder and notebooks became subject to plain view during the

officer's authorized search for the stamps and receipts. *State v. Loh,* 275 Mont. 460, 472-73, 914 P.2d 592, 598-600 (1996).

¶31 The State argues, and Covington does not dispute, that the plain view need not be inadvertent so long as the officers otherwise possessed proper authority. *Loh,* 275 Mont. at 472-73, 914 P.2d at 598-600. Covington does not dispute that officers had proper authority to conduct a search of his residence. Covington also fails to contend that pawn receipts and stamps could not have been located within the binder and notebooks. The officers had sufficient probable cause through their second warrant to seize the binder and notebooks based on the plain view of the binder's and notebooks' writings that occurred during the original search.

¶32 Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER

Justice Patricia O. Cotter specially concurs.

¶33 I concur in the Court's Opinion, but not in all that is said in the Court's discussion of Issue One. The United States Supreme Court held in *Blakely v. Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 2536 (2004), that " '*[o]ther than the fact of a prior conviction*, any fact

13

that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt' " (emphasis added) (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000)). Relying on *Blakely,* we held in *State v. Vaughn*, 2007 MT 164, ¶ 50, 338 Mont. 97, 164 P.3d 873, *overruled in part on other grounds*, *Whitlow v. State*, 2008 MT 140, ¶ 18 n. 4, 343 Mont. 90, 183 P.3d 861, that the factual determination of the existence of a prior conviction may properly be made by the sentencing court rather than a jury.

¶34 Covington does not argue that the court's finding that he had two prior robbery convictions was erroneous. Moreover, he has failed to advance any logical or constitutional justification for his contention that a jury determination of his convictions is necessary, and has failed to persuade that we should overturn *Vaughn* or ignore *Blakely.* I would affirm on this basis and end the discussion there.

¶35 I otherwise concur.

/S/ PATRICIA COTTER

Justice James C. Nelson joins the Special Concurrence of Justice Patricia O. Cotter.

/S/ JAMES C. NELSON