FILED

June 30 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 14-0688

DA 14-0688

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 180

MARK MUIR, CHIEF OF POLICE, CITY
OF MISSOULA, STATE OF MONTANA,

        Petitioner and Appellee,

  v.

BOBBY JEROME BILDERBACK,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
                      In and For the County of Missoula, Cause No. DV-13-551
                      Honorable Karen S. Townsend, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Craig Shannon, Attorney at Law, Missoula, Montana

        For Appellee:

                Kirsten H. Pabst, Missoula County Attorney, Andrew Paul, D. James
                McCubbin, Deputy County Attorneys, Missoula, Montana

Submitted on Briefs: May 6, 2015
          Decided: June 30, 2015

Filed:

                                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Bobby Bilderback appeals from several orders of the District Court.  We affirm.

¶2    We restate Bilderback's issues for review as follows:

¶3    1.  Whether the District Court in its order of December 3, 2013, properly denied Bilderback's motion to suppress the evidence seized pursuant to the search warrant executed on his Hummer vehicle.

¶4    2.  Whether the District Court in its order of August 25, 2014, properly denied Bilderback's motion to dismiss the forfeiture proceeding for lack of personal service of the notice of the forfeiture hearing.

¶5    3.  Whether the District Court in its order of December 2, 2013, properly denied Bilderback's motion for summary judgment.

## BACKGROUND

¶6    In March 2013 law enforcement officers in Washington State contacted the Missoula Police asking for assistance in locating Bobby Bilderback, who was wanted in Washington in connection with a homicide case.  Washington officers supplied a Missoula address for Bilderback and a description of his Hummer vehicle which had Montana license plates.  Missoula Police found Bilderback at the residence in Missoula, along with the Hummer.  They took Bilderback into custody and seized the Hummer vehicle.  Missoula Police Detective Curtis applied for and received a search warrant for the Hummer from the Montana Fourth Judicial District Court.  Curtis supplied his own affidavit in support of the warrant, incorporating an affidavit of Detective Brown of the Whitman County Washington Sheriff's Office.  The contents of the Brown affidavit are discussed more thoroughly below.

2

¶7    Missoula officers executed the search warrant for the Hummer.  They found a locked metal tool box that contained over $36,000 in cash.  They also found a thermos bottle in the engine compartment attached by a magnet.  The thermos contained a baggie with methamphetamine residue in it.

¶8    On May 9, 2013, Mark Muir, then the Missoula Chief of Police, instituted this proceeding pursuant to § 44-12-102, MCA, seeking forfeiture of the Hummer, the cash and other items found during the search.  The forfeiture petition and summons were served on Bilderback.  He appeared through counsel and filed several motions in the forfeiture proceeding, including a motion to suppress the results of the search warrant.  The District Court denied the motion and set the forfeiture matter for hearing on May 21, 2014.  Neither Bilderback nor his attorney appeared at the hearing.  The District Court received evidence from the State in support of forfeiture and ordered forfeiture of the Hummer and the cash.  Bilderback appeals.[1]

## STANDARDS OF REVIEW

¶9    This Court reviews a district court's ruling on a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of the law are correct.  *State v. Minett*, 2014 MT 225, ¶ 7, 376 Mont. 260, 332 P.3d 235.  This Court reviews a district court's decision on a motion to dismiss de novo, to determine whether it is correct.  *Milky Whey, Inc. v.*

---

[1] Bilderback was convicted of the homicide offense in Washington and sentenced to prison.  His mother, Marie Felton, also claims an interest in the Hummer.  We consider her claims in a separate appeal, DA 14-0687.  Bilderback was not charged with an offense in Montana.

*Dairy Partners*, 2015 MT 18, ¶ 7, 378 Mont. 75, 342 P.3d 13. This Court reviews a district court's ruling on summary judgment de novo, applying the same criteria under M. R. Civ. P. 56 as the district court. *Bennet v. Hill*, 2015 MT 30, ¶ 9, 378 Mont. 141, 342 P.3d 691.

## DISCUSSION

¶10  *Issue 1: Whether the District Court in its order of December 3, 2013, properly denied Bilderback's motion to suppress the evidence seized pursuant to the search warrant executed on his Hummer vehicle.*

¶11  The Montana Constitution requires that:

> No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing.

Mont. Const. Art. II, § 11. This is consistent with the requirements of the Fourth Amendment to the United States Constitution. *State v. Bar-Jonah*, 2004 MT 344, ¶ 63, 324 Mont. 278, 102 P.3d 1229. Montana law specifies the requirements for issuing a search warrant:

> A judge shall issue a search warrant to a person upon application, in writing or by telephone, made under oath or affirmation, that:
> (1) states facts sufficient to support probable cause to believe that an offense has been committed;
> (2) states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found;
> (3) particularly describes the place, object, or persons to be searched; and
> (4) particularly describes who or what is to be seized.

Section 46-5-221, MCA. Officers executing a warrant may search for and seize evidence, contraband, or persons. Section 46-5-224, MCA. The warrant must be specific

4

enough to reasonably identify the things to be seized, and to prevent general exploratory searches. The description of items to be seized needs to be reasonably specific but not elaborately detailed. *Bar-Jonah*, ¶ 64. The fact that evidence may be used to support another charge does not require suppression. *Bar-Jonah*, ¶ 64. The sufficiency of a warrant is considered on a case-by-case basis to determine whether alleged defects affect the substantial rights of the accused. *State v. West*, 1998 MT 282, ¶ 8, 291 Mont. 435, 968 P.2d 289.

¶12 This Court assesses the totality of the circumstances to determine whether a search warrant is based upon probable cause. In that context, the official issuing the warrant must only determine that there was a probability of criminal activity. *State v. Barnaby*, 2006 MT 203, ¶¶ 29-30, 333 Mont. 220, 142 P.3d 809. The official issuing the warrant must make a "practical, common sense determination, given all the evidence contained in the application for a search warrant, whether a fair probability exists that contraband or evidence of a crime will be found in a particular place." *State v. Zito*, 2006 MT 211, ¶ 7, 333 Mont. 312, 143 P.3d 108. Probable cause must be determined from within the four corners of the application for a warrant, and the judicial officer's determination that probable cause exists is entitled to "great deference and every reasonable inference possible [must] be drawn to support that determination of probable cause." *State v. Tucker*, 2008 MT 273, ¶ 17, 345 Mont. 237, 190 P.3d 1080.

¶13 When the information supporting the application for a search warrant comes from an informant, the first inquiry is whether the informant was anonymous. If so, then the information must be corroborated. *Tucker*, ¶ 20. If an informant is identified and is

motivated by "good citizenship" then the information is deemed reliable if it demonstrates a sufficient degree of knowledge of the circumstances under which the information was obtained. *State v. Palmer,* 2003 MT 129, ¶ 18, 316 Mont. 46, 68 P.3d 809.

¶14 Bilderback moved to suppress the results of the search warrant issued for his Hummer vehicle and the District Court denied that motion in its order of December 3, 2013. Bilderback raises several issues on appeal attacking the validity of the search warrant. He contends that the application for the search warrant was deficient in that it relied upon information from an informant named Griffith. He contends that the basis for Griffith's knowledge about a "lock box" in the Hummer was not established, that his tip was not corroborated, and that his information did not "establish" that evidence would be found in the Hummer.

¶15 The application for the search warrant was supported by an affidavit from Detective Curtis of the Missoula Police, which incorporated a separate affidavit by Deputy Sheriff Brown of the Whitman County Washington Sheriff's Office. Brown's affidavit recounted in detail the Washington investigation of Bilderback's involvement in the drug-overdose death of a minor in Bilderback's house in Washington. The Brown affidavit listed several individuals who provided information to the investigation, including Bradley Griffith. Griffith was a long-time resident of Spokane, Washington; a "close friend" of Bilderback for four years; and had stayed at Bilderback's house where the overdose occurred. He originally contacted law enforcement himself, because of his concern for the safety of the minor, who was "missing" at that point, and for his own

safety "due to the people involved." Griffith had no criminal history and provided law enforcement with his name, address, phone number, and social security number. Deputy Brown affirmed that Griffith's knowledge of Bilderback and the residence were consistent with information from other sources. Brown also described Bilderback's Hummer vehicle, observed at his residence in Washington, and provided the Montana license plate, the VIN number, and the registered owners—Bilderback and his mother Marie Felton.

¶16 Griffith reported to Washington officers that Bilderback was "heavily involved in the distribution of methamphetamine and cocaine from Las Vegas to Montana." Griffith also reported that Bilderback asked him to come to his house after the minor overdosed, and that Bilderback described the death as an overdose of methamphetamine. Griffith also reported Bilderback's description of using a safe that Griffith had previously seen in Bilderback's house to dispose of the body. Griffith described his observation of Bilderback and another individual loading the safe containing the body into a vehicle and leaving Bilderback's house. Griffith reported that Bilderback had given methamphetamine to the other person for help in disposing of the body of the minor. Griffith reported that Bilderback had borrowed a "lock box" from him and that it could be found in the Hummer vehicle.

¶17 The Brown affidavit also recounted a meeting between Bilderback and Washington law enforcement officers where Bilderback "admitted to investigators that he is involved in the illegal drug trafficking business, specifically methamphetamine." Bilderback showed the officers how he stored the drugs in thermos bottles, and said that

on the night the minor disappeared, a thermos of methamphetamine and over $50,000 in cash also disappeared from his garage. The Washington officers inferred from what Bilderback said that he used thermos bottles to hide drugs inside of vehicles.

¶18 It is clear that Griffith was a named informant who disclosed not only his name but also his address, phone number and social security number. His contact with law enforcement was motivated by his concern for the missing minor and for his own safety. He provided detailed information about how he knew Bilderback, about what he observed, and about what Bilderback confessed to him. Griffith's information about Bilderback's involvement in drug trafficking was confirmed by Bilderback's own admission to law enforcement. Therefore, it is clear that Griffith was a reliable informant whose information could form part of the basis for the search warrant application. *Zito*, ¶ 10; *Palmer*, ¶ 18. While Bilderback argues that Griffith's information about the "lockbox" should have either contained more detail or had independent corroboration, the informant reliability factors discussed above render that unnecessary.

¶19 Bilderback contends that the search warrant for his Hummer vehicle that was issued in Montana was impermissibly based upon an offense that happened solely in Washington State—the drug overdose of the minor. We do not reach this issue because while most of Deputy Brown's lengthy affidavit concerns the investigation of the overdose death in Washington, it also provided concrete information about Bilderback's acknowledged involvement in drug trafficking, about his trafficking into Montana, and about his ownership of a Hummer vehicle registered in Montana. When the police in Missoula located Bilderback, the Hummer was with him at the residence. This

8

information was sufficient to support a search of the Hummer in Montana based upon probable cause to believe that it would contain cash, drugs or other evidence of Bilderback's drug trafficking.

¶20 We have upheld the issuance of a warrant where the application did not "explicitly name the offense, but the facts stated clearly indicated that the suspected offense was possession of dangerous drugs." *State v. Kelly*, 205 Mont. 417, 430-431, 668 P.2d 1032, 1040 (1983). Here there was substantial information, reflected in the application for the warrant, about Bilderback's involvement in drugs, in the transportation of drugs into Montana, and in the use of vehicles to both secrete and transport drugs. The application sought, and the warrant authorized, a search for illegal drugs, drug paraphernalia, proceeds of drug sales, and other evidence relating to drug activity contrary to Montana law. When officers searched the Hummer they found a locked toolbox containing cash and a thermos bottle secreted in the engine compartment containing drug residue.

¶21 Bilderback contends that the search warrant for the Hummer was an impermissible "general" warrant, and particularly that it failed to specifically describe the "lockbox" noted by informant Griffith. Griffith's statements to law enforcement referenced that Bilderback asked to borrow a "lockbox" from him, which he thought could be in the Hummer. Considering as we must the totality of the circumstances here, Griffith's information supports a probability that Bilderback was interested in locked containers which reasonably could be used to secrete either drugs or the cash proceeds of drug transactions. Whether the search found the specific "lockbox" that Griffith mentioned is not pertinent. The warrant itself authorized the search of "the contents of any safes or

9

secured/locked containers." This was sufficiently specific to allow the officers in Missoula to conduct a reasonable and focused search of the Hummer.

¶22 People who smuggle drugs or deal drugs often secrete them in vehicles. The locking toolbox was in fact a "lockbox" that reasonably could have contained cash, drugs, or other evidence of drug trafficking. It was clearly covered by the warrant and officers were authorized to open it.

¶23 Upon review of the facts and Bilderback's arguments, we determine that the warrant was properly issued and properly executed.

¶24 *Issue 2. Whether the District Court in its order of August 25, 2014, properly denied Bilderback's motion to dismiss the forfeiture proceeding for lack of personal service of the notice of the forfeiture hearing.*

¶25 After the seizure and search of the Hummer vehicle the Missoula police instituted the instant forfeiture proceeding in May 2013. The petition for forfeiture named Bilderback as the respondent and a summons and copy of the petition were served upon him. Bilderback appeared through counsel and filed an answer to the petition. He was represented by counsel throughout the forfeiture proceedings. On June 5, 2013, the District Court set a hearing on the forfeiture petition but later continued the hearing at Bilderback's request. The hearing was subsequently continued and the date re-set a number of times, often at Bilderback's request. In April 2014 Bilderback moved that he be allowed to participate in the hearing by telephone because he was incarcerated in Washington and could not attend the hearing personally. The District Court granted the motion.

10

¶26 Neither Bilderback nor his attorney appeared at the May 21, 2014 forfeiture hearing. The District Court had court staff call Bilderback's attorney to inquire whether either would attend the hearing, and Bilderback's attorney responded to the District Court's inquiry: "per Bilderback, no." Bilderback first contended that he was entitled to personal notice of the hearing date by motion filed June 30, 2014. Bilderback does not contend that he was not aware of the hearing date, or that his attorney lacked notice of the hearing. Rather, he contends that he was entitled to separate personal notice under § 44-12-203(3), MCA, and that in the absence of such notice the entire forfeiture proceeding was void.

¶27 Section 44-12-203(3), MCA, provides that:

> If a verified answer is filed within 20 days, the forfeiture proceedings must be set for hearing without a jury no sooner than 60 days after the answer is filed. Notice of the hearing must be given in the manner provided for service of the petition and summons.

Section 44-12-201, MCA, provides that service of the petition and summons is made "as provided in the Montana Rules of Civil Procedure." Drug-related forfeiture proceedings are civil actions in Montana, and the rules of civil procedure apply. *Magone v. Aul*, 269 Mont. 281, 284, 887 P.2d 1235, 1237 (1994). In a civil proceeding, after the initial service of summons, when a party is represented by an attorney, service of all matters *must* "in all cases" be served "upon his attorney instead of the party." Section 25-3-402, MCA; Rule 5(b)(1), M. R. Civ. P.

¶28 We must reconcile the apparent conflict between the requirement in the forfeiture statutes that notice of the hearing be personally served, with the requirement in the Rules

11

of Civil Procedure that after service of summons all matters must be served upon the party's attorney. We do so by determining that § 44-12-203(3), MCA, requiring service of the notice of hearing "in the manner provided for service of the petition and summons" applies when the respondent does not appear through counsel, and that Rule 5(b)(1), M. R. Civ. P. and § 25-3-402, MCA, requiring service upon the party's attorney apply when the respondent appears through counsel. Bilderback received personal service of the petition and summons, effecting jurisdiction of the District Court to determine his interest in the seized property as required by Rule 4(b)(2), M. R. Civ. P. Thereafter his attorney received notice of each of the various hearing dates.

¶29 There is no issue that Bilderback's attorney received proper and timely notice of the hearing and no further notice was required.

¶30 *Issue 3. Whether the District Court in its order of December 2, 2013, properly denied Bilderback's motion for summary judgment.*

¶31 Bilderback moved for summary judgment, contending that his mother Marie Felton was an innocent owner of the seized Hummer under § 44-12-102, MCA, and therefore entitled to possession of it. He also contended that there was no evidence that the Hummer was used in a drug offense. The motion was supported by affidavits, including an affidavit from Felton that she was a registered owner of the Hummer, and that she did not consent to or know about any use if it for any illegal purpose. Bilderback moved for summary judgment in his favor on "all claims" in the forfeiture petition.

¶32 Muir presented affidavits in support of the contention that Felton was a sham owner who was not entitled to assert the innocent owner defense, and that the Hummer

12

had been used in drug offenses. The District Court considered the materials presented in support of and in opposition to the motion for summary judgment, rejecting certain portions of Muir's evidence that Bilderback contended was hearsay.

¶33 The District Court concluded that the materials demonstrated that there were genuine issues of material fact as to the nature and extent of Felton's ownership interest in the Hummer, and as to whether the Hummer had been used in drug transactions. Summary judgment may not be granted when there are genuine issues of material fact. *Bennett,* ¶¶ 9, 17. The District Court properly considered the evidence presented by the parties and properly determined that summary judgment was not warranted.

¶34 Having considered the record and the arguments presented by Bilderback, we affirm the District Court.

/S/ MIKE McGRATH

We Concur:

/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON

13