FILED

07/12/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0053

DA 15-0053

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 163

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JASON KASPAREK,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Ninth Judicial District,
In and For the County of Glacier, Cause No. DC 13-47
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Chief Appellate Defender, Helena, Montana

          Carolynn M. Fagan, Fagan Law Office, P.C., Missoula, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

          Carolyn Berkram, Glacier County Attorney, Cut Bank, Montana

Submitted on Briefs:  April 20, 2016

Decided:  July 12, 2016

Filed:

_____
                Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Jason Kasparek ("Kasparek") appeals from his conviction in the Ninth Judicial District, Glacier County, for felony burglary.  We affirm.

## ISSUES

¶2     We review the following issues on appeal:

*Issue One:  Did the District court err in denying Kasparek's motion to suppress evidence obtained pursuant to a search warrant?*

*Issue Two:  Did the District Court err in denying Kasparek's motion to suppress his statements while in custody?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On August, 27, 2013, Deputy Glacier County Sheriff Justin Stokes ("Deputy Stokes") responded to a report about a burglary at Judy Como's ("Como") residence in Browning, Glacier County, Montana.  Como had been working from 7:00 p.m. to 7:00 a.m.  She told Deputy Stokes that her house had been burglarized during that time.  Several items were missing, including several one-hundred dollar bills, a desktop computer, two boxes of jewelry, and ten packs of green Marlboro cigarettes.  Como informed Deputy Stokes that her estranged husband Spencer Atchley's ("Atchley") drug test results, which were at Como's residence, were also missing.  There were also signs of forced entry on the front door.

¶4     Deputy Stokes then spoke with Como's neighbor, Doreen Momberg ("Momberg").  Momberg informed the Deputy that she saw a four-door white car with three people inside stop at Como's residence at 10:30 p.m.  These people were later

2

identified as Atchley, Noelle Martin ("Martin"), Atchley's mother, and Kasparek. Kasparek and Atchley stepped out of the car and entered Como's residence. Kasparek and Atchley then exited the house and left in the white car. Momberg reported that around fifteen minutes later, Kasparek, Atchley, and Martin returned to the house, but that Kasparek re-entered Como's residence alone. Atchley and Martin left while Kasparek was inside but returned fifteen-twenty minutes later and picked him up.

¶5 Deputy Stokes included all this information in an application for a search warrant for Kasparek's residence. The District Court issued the warrant. The record shows that upon searching Kasparek's residence, the police found several of the items missing from Como's residence. Based on that evidence, Kasparek was arrested and transported to a holding cell. Kasparek was not read his *Miranda*[1] rights. Captain Tom Seifert of the Glacier County Sheriff's Department ("Captain Seifert") testified that around 3:00 p.m., while Kasparek was in the holding cell, Captain Seifert asked Kasparek whether he would like to speak with him, and Kasparek responded that he would "rather not." Captain Seifert left the room and after working for another two hours he went off shift at 5:00 p.m. Captain Seifert went home and then returned to the jail around 8:00 p.m. Upon his return, Captain Seifert again asked Kasparek whether he understood why he was in the holding cell and reminded him that if he wanted to talk, he would have an opportunity do so. Kasparek then suddenly started "talking very fast" and provided a partial confession. Captain Seifert testified that he immediately stopped Kasparek and read him his *Miranda* rights, after which Kasparek told Captain Seifert his account of

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966).

what had happened at the Como residence. Prior to trial, Kasparek made a motion to suppress the evidence found in his residence and the statements he made to Captain Seifert. On July 23, 2014, he pled guilty, reserving his right to appeal the denial of both motions. Kasparek now appeals.

**STANDARD OF REVIEW**

¶6    We review a district court's ruling on a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether the court's application of the law is correct. *State v. Minett*, 2014 MT 225, ¶ 7, 376 Mont. 260, 332 P.3d 235.

**DISCUSSION**

¶7    *Issue One: Did the District Court err in denying Kasparek's motion to suppress evidence obtained pursuant to a search warrant?*

¶8    The Montana Constitution states that "[n]o warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person to be seized, or without probable cause, supported by oath or affirmation reduced to writing." Mont. Const. art. II, § 11. Montana's protections against warrantless searches are consistent with the requirements of the Fourth Amendment to the United States Constitution. *See State v. Bar-Jonah*, 2004 MT 344, ¶ 63, 324 Mont. 278, 102 P.3d 1229. In Montana, a judge shall not issue a warrant unless the application for the search warrant:

> (1) states facts sufficient to support probable cause to believe that an offense has been committed;
> (2) states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found;

4

(3) particularly describes the place, object, or persons to be searched; and

(4) particularly describes who or what is to be seized.

Section 46-5-221, MCA. The sufficiency of a warrant is assessed on a case-by-case basis to determine whether any alleged defect in the warrant application is sufficient to affect the substantial rights of the accused. *Muir v. Bilderback*, 2015 MT 180, ¶ 11, 379 Mont. 459, 353 P.3d 473 (citing *State v. West*, 1998 MT 282, ¶ 8, 291 Mont. 435, 968 P.2d 289). We have adopted the "totality of the circumstances test" to evaluate the existence of probable cause in a search warrant application. *State v. Reesman*, 2000 MT 243, ¶ 24, 301 Mont. 408, 10 P.3d 83. Under that test, we consider if "the issuing judicial officer [made] a practical, common sense determination, given all the evidence contained in the application for a search warrant, whether a fair probability exists that contraband or evidence of a crime will be found in a particular place." *State v. Barnaby*, 2006 MT 203, ¶ 29, 333 Mont. 220, 142 P.3d 809 (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)). Furthermore, probable cause must be found within the four corners of the warrant application. *Muir*, ¶ 12. The judge's determination that probable cause exists is entitled to "great deference and every reasonable inference possible [must] be drawn to support that determination of probable cause." *Muir*, ¶ 12 (citing *State v. Tucker*, 2008 MT 273, ¶ 17, 345 Mont. 237, 190 P.3d 1080) (internal quotations omitted).

¶9 Kasparek challenges the validity of the search warrant application on the grounds that the application did not contain sufficient facts to support the existence of probable cause, and that the search warrant contained misleading information. First, Kasparek claims that the search warrant application, as supported by Momberg's rendition of his

5

activities that night, does not explicitly depict Kasparek burglarizing Como's home. Kasparek argues that the warrant application only places him at the scene of the crime and mere presence at a crime scene is not sufficient for probable cause. *See State v. Nalder*, 2001 MT 270, ¶ 15, 307 Mont. 280, 37 P.3d 661.

¶10 However, while it is correct that mere presence at the scene of a crime is not sufficient to exercise a warrantless arrest, that is not the analysis we apply to determine the sufficiency of a search warrant application. *Nalder*, ¶ 15. Kasparek conflates the analysis for assessing the legality of an arrest with the existence of probable cause in a search warrant application. In this case, the issuing official had to determine whether "a fair probability exists that contraband or evidence of a crime will be found in a particular place" based upon the information provided in the warrant application. *Barnaby*, ¶ 29. Deputy Stokes investigated the crime scene and after interviewing Como established that the burglary happened between 7:00 p.m. and 7:00 a.m. Kasparek was identified and seen entering Como's house twice during that time. The first time Kasparek entered the home he was in the company of Atchley. Atchley and Kasparek entered Como's house while Como was not there. Fifteen minutes later Kasparek was seen entering the house alone. Although Kasparek was not seen carrying the burglarized items out of the front door, he was seen leaving twenty minutes later. Como also reported that her schedule was known to Atchley. All of this information was included in the application for a search warrant. In sum, the information establishes more than mere presence at the scene.

¶11 Second, Kasparek claims that the search warrant contained misleading information because the application did not include the fact that Atchley had Como's permission to enter the house or that Momberg did not see Kasparek carry the stolen items out of Como's residence. In support of his argument, Kasparek cites *State v. Worrall*, 1999 MT 55, ¶ 33, 293 Mont. 439, 976 P.2d 968. In *Worrall*, we held that it is the defendant's burden to show that a search warrant application is deficient and that "a judge or magistrate is required to evaluate only the facts asserted within the four corners of a search warrant application." *Worrall*, ¶ 33 (internal citation omitted). Defendants have long had an opportunity to challenge the legality of searches based primarily on the sufficiency of probable cause in the search warrant application. *Tucker*, ¶¶ 17-18; *Barnaby*, ¶ 29. However, *Worrall* has approved assessing information alleged to have been omitted from a search warrant application, and therefore not within the four corners of the affidavit. *Worrall*, ¶¶ 43-45. *Worrall* held that the sufficiency of a search warrant can be reviewed by assessing information that was never part of the original application. *Worrall*, ¶¶ 45-46.

¶12 A search warrant is only sufficient if it is based on the existence of the "fair probability . . . that contraband or evidence of a crime will be found in a particular place." *Barnaby*, ¶ 29. The integrity of the search warrant is essential for protecting the people against unreasonable searches. U.S. Const. amend. IV; Mont. Const. art. II, § 11. Therefore, we have long held that the determination of the existence of probable cause must be limited to an assessment of information within the four corners of the search warrant application. *State v. Rinehart*, 262 Mont. 204, 211, 864 P.2d 1219, 1223 (1993);

7

*State v. Sundberg*, 235 Mont. 115, 119, 765 P.2d 736, 739 (1988); *State v. O'Neill*, 208 Mont. 386, 393, 679 P.2d 760, 763 (1984); *State v. Isom*, 196 Mont. 330, 341, 641 P.2d 417, 423 (1982). A judge's assessment of the existence of probable cause must be based solely on the statements and facts included in the application. *Tucker*, ¶ 17. This legal principle preserves the reliability of the search process because an application "supported by oath or affirmation [and] reduced to writing," containing information sworn to as accurate not only creates a firm record for review but also reduces the possibility that probable cause will not be based on elusive and unarticulated grounds. Mont. Const. art. II, § 11; *see also* U.S. Const. amend. IV. Allowing a defendant to challenge the sufficiency of probable cause in a search warrant based on information that was not included in the application undermines the constitutional safeguards against unreasonable searches, invites speculation and conjecture into the process and stands in direct contradiction to decades of precedent. To the extent that *Worrall* approved of retroactively considering omitted information from a search warrant application in order to test the sufficiency of probable cause, it is overruled. We judge the sufficiency of a search warrant application by looking to the statements and facts contained on the face of the application. *Tucker*, ¶¶ 16-17; *Barnaby*, ¶ 29. We will not review the sufficiency of a warrant application by assessing the effect of facts omitted from the original application.

¶13 We are not suggesting that a defendant cannot challenge the validity of the information contained within the application. *See Franks v. Delaware*, 438 U.S 154, 98 S. Ct. 2674 (1978). Kasparek had the burden of making a substantial showing that the warrant application contained misleading or untrue information sufficient to skew the

8

issuing official's determination of probable cause. *State v. Clifford*, 2005 MT 219, ¶ 58, 328 Mont. 300, 121 P.3d 489. He has not met his burden.

¶14 Deputy Stokes presented the issuing official with facts that showed that Kasparek had entered Como's home twice in her absence and without her permission within the same time-span that Como's house was burglarized. On the second trip he was alone in the house over twenty minutes. Deputy Stokes indicated in his affidavit that he knew from his experience and training that stolen property is usually taken and hidden in the residence of the suspected burglar. Based upon the above facts, the judge had to determine whether there was a fair probability that evidence of the burglary could be found in Kasparek's residence. Considering that the judge is entitled to "great deference and every reasonable inference possible [must] be drawn to support that determination of probable cause," we cannot conclude that the district court erred in denying Kasparek's motion to suppress the evidence found in his home pursuant to the search warrant. *Muir*, ¶ 12.

¶15 *Issue Two: Did the District Court err in denying Kasparek's motion to suppress his statements?*

¶16 In Montana "[n]o person shall be compelled to testify against himself in a criminal proceeding." Mont. Const. art. II, § 25. This is consistent with the United States Constitution's Fifth Amendment Clause that applies to the States through the Fourteenth Amendment's Due Process Clause. *Malloy v. Hogan*, 378 U.S. 1, 6-11, 84 S. Ct. 1489, 1492-95 (1964). "When a person is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, he must

be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *State v. Nixon*, 2013 MT 81, ¶ 18, 369 Mont. 359, 298 P.3d 408 (*citing State v. Morrisey*, 2009 MT 201, ¶ 28, 351 Mont. 144, 214 P.3d 708 (quoting *Miranda*, 384 U.S. at 478, 86 S. Ct. at 1630) (internal quotations omitted)).

¶17 Thus, before a person is subjected to custodial interrogation he must be warned of his rights and if the warnings are not given nor a waiver obtained, the law generally requires an exclusion of any statements made during the interrogation. *Nixon*, ¶ 19. If a person in custody invokes his right to remain silent, the police must scrupulously honor that request and cease the interrogation. *Morrisey*, ¶ 38. A suspect is not required to use precise language when invoking his right to be silent. If a defendant expresses that he does not wish to speak, that is sufficient to invoke his right to remain silent. *Morrisey*, ¶ 40. However, we have also held that the person in custody is ultimately in control of his own statements in an interrogation setting. *Morrissey*, ¶¶ 42-44.

¶18 Further, not every statement made during a custodial setting constitutes police interrogation. *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1689-90, (1980). We have previously held that "interrogation under *Miranda* extends only to "words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Morrisey*, ¶ 43 (citing *Innis*, 446 U.S. at 301-02, 100 S. Ct. at 1689-90) (internal quotation omitted). The interrogation "must reflect a measure of compulsion above and beyond that inherent in custody itself." *Morrisey*, ¶ 43 (citing *Innis*, 446 U.S. at 301-02, 100 S. Ct. at 1689-90) (internal quotation omitted).

10

Additionally, in Montana we require the electronic recording of custodial interrogations. Section 46-4-408, MCA. However, if the statements were made voluntarily and are reliable, an exception may apply to the requirement of an electronic recording. Section 46-4-409(1), MCA. Notwithstanding those provisions, "[a]ny irregularity in a proceeding specified by this title that does not affect the substantial rights of the accused must be disregarded." Section 46-1-103(3), MCA.

¶19 The record here shows that Captain Seifert first approached Kasparek while he was in custody and asked him whether he wanted to talk. Kasparek declined. Captain Seifert's invitation to speak is not, absent any other actions, "reasonably likely to elicit an incriminating response" from Kasparek. *Morrisey*, ¶ 43. Thus the first interaction between Kasparek and Captain Seifert was not an interrogation because it did not "reflect a measure of compulsion above and beyond that inherent in custody itself." *Morrisey*, ¶ 43. The second interaction between Kasparek and Captain Seifert occurred around five hours later, when Captain Seifert asked if he had been told what the charges were against him, and again inquired whether Kasparek was willing to speak to him. The District Court found that the defendant "began talking very fast to the point of almost being incomprehensible." Even if Kasparek had initially invoked his right to remain silent, we cannot agree that a second invitation to communicate five hours after the initial inquiry is a failure to scrupulously honor Kasparek's constitutional rights. *Morrisey*, ¶¶ 42-44. Furthermore, it is uncontroverted that Captain Seifert responded to Kasparek's sudden outpour by reading him his rights, as is required by law. *Nixon*, ¶ 18. Thus we cannot

11

conclude that the District Court committed clear error when it found that Captain Seifert did not violate Kasparek's constitutional rights.

¶20 Kasparek also asserts that his statements should be suppressed because his interrogation was not recorded pursuant to § 46-4-408, MCA. Indeed, Captain Seifert did not record the interrogation that followed after Kasparek was read his rights. However, the record shows that Kasparek's statements were voluntary and reliable; Kasparek was read his rights immediately after he began to speak and he was not coerced or otherwise induced to speak. *State v. Gittens*, 2008 MT 55, ¶ 27, 341 Mont. 450, 178 P.3d 91. Furthermore, Captain Seifert testified that he memorialized the interrogation shortly after its conclusion to ensure its accuracy and reliability. The State established by a preponderance of the evidence that Kasparek's statements were voluntary and reliable; as such they qualify for the exception for the electronic recording of custodial interrogations pursuant to § 46-4-409, MCA. And, since Kasparek's interrogation was conducted in a manner consistent with his substantial rights, the lack of a recording will not alone warrant a suppression of his statements. Section 46-1-103(3), MCA.

## CONCLUSION

¶21 For the foregoing reasons, we affirm the May 28, 2014 District Court Order Denying Motion to Suppress Physical Evidence and Admissions. The judgment of November 26, 2014, is affirmed.

/S/ MIKE McGRATH

12

We Concur:

/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ JIM RICE