FILED

10/04/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0050

DA 15-0050

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 250N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ALISHA YVONNE MCDANAL,

      Defendant and Appellant.

APPEAL FROM:     District Court of the Twentieth Judicial District,
                    In and For the County of Lake, Cause No. DC-13-175
                    Honorable James A. Manley, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

            Chad Wright, Chief Appellate Defender, Haley Connell Jackson,
            Assistant Appellate Defender, Helena, Montana

      For Appellee:

            Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
            Attorney General, Helena, Montana

            Steven N. Eschenbacher, Lake County Attorney, Polson, Montana

Submitted on Briefs:  August 24, 2016

Decided:  October 4, 2016

Filed:

_____
                          Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Alisha Yvonne McDanal (McDanal) appeals from a September 24, 2014 conviction pursuant to a plea agreement in which she reserved the right to appeal the District Court's denial of her motions to suppress. McDanal pled guilty to the offense of felony criminal possession of dangerous drugs in exchange for a three-year deferred sentence. The Court stayed McDanal's sentence until the conclusion of her appeal. McDanal timely appealed. We affirm.

¶3      On November 14, 2013, the State charged McDanal with felony intimidation. The State later amended the Information to felony criminal possession of dangerous drugs, in violation of § 45-9-102, MCA. The charges arise from a November 3, 2013 arrest. Polson police received a report that a possible domestic assault was in progress in the apartment McDanal and her boyfriend shared. McDanal was present during the assault but was not the victim. Police found the victim outside the apartment with a broken leg, later determined to be a bullet wound.

¶4      To search for evidence of the assault Polson police obtained a search warrant for McDanal's apartment, and searched it that evening. In the apartment, Officers

2

discovered drug paraphernalia commonly associated with methamphetamine use and several small bags containing white powder that tested positive for methamphetamine. Detective Michelle Scott (Det. Scott) interviewed McDanal that evening at the Lake County Detention Facility. Det. Scott reported McDanal "had unnatural body movements, unnatural movement of her mouth and facial expressions which are similar to those under the influence of methamphetamine." Based on her training and experience Det. Scott believed McDanal was under the influence of drugs, specifically methamphetamine.

¶5 On November 5, 2013, two days after the arrest, Det. Scott applied for a search warrant to test McDanal's urine for methamphetamine. In the application Det. Scott included the following facts: Det. Scott is a credible witness as she is trained and experienced in detection of drug use, including methamphetamine; police responded to a possible domestic dispute at McDanal's apartment, where police found a victim with a gunshot wound to the leg; police obtained a search warrant for McDanal's apartment, which when executed resulted in the discovery of drugs and paraphernalia associated with methamphetamine use in various places throughout the apartment; and Det. Scott personally interviewed McDanal, observing McDanal was impaired, had unnatural body movements, and unnatural movements of the face and mouth similar to people under the influence of methamphetamine. McDanal's urine was seized pursuant to the search warrant and tested positive for methamphetamines.

¶6 On November 14, 2013, the State charged McDanal with felony intimidation. Upon McDanal's request, the trial was continued multiple times. On July 3, 2014, the

3

District Court granted the State's motion to amend its Information to charge McDanal with felony criminal possession of dangerous drugs. On August 1, 2014, McDanal filed two motions to suppress, one to suppress the drugs and paraphernalia found in the apartment, and one to suppress the positive drug results from the urine analysis test.

¶7 The District Court initially granted the motion to suppress .08 grams of alleged drug evidence, but denied the motion to suppress the urine analysis test. The District Court, in its order denying McDanal's motion to suppress the urine analysis test, excised the evidence of the .08 grams of alleged drug evidence when it reviewed the application for the search warrant. The District Court determined the facts stated in the application were sufficient to show probable cause that criminal possession of dangerous drugs had occurred, and the urine test was reasonably calculated to find evidence of that crime, satisfying the requirements of § 46-5-221, MCA. McDanal appeals the order denying her motion to suppress the urine analysis results.

¶8 We review a district court's ruling on a motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether the court's interpretation and application of the law is correct. *State v. Minett*, 2014 MT 225, ¶ 7, 376 Mont. 260, 332 P.3d 235.

¶9 McDanal argues the District Court erred when it denied her motion to suppress evidence of the urine analysis results. She argues that at the time the search warrant was issued, the facts asserted in the application were stale, and therefore were not sufficient to show probable cause that methamphetamine would be found in her urine.

4

¶10    The Montana Constitution states, "[n]o warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, or without probable cause, supported by oath or affirmation reduced to writing." Mont. Const. art. II, § 11.  In Montana, judges shall issue search warrants when a law enforcement officer, under oath or affirmation, in writing, electronically, or by telephone:

> (1) states facts sufficient to support probable cause to believe that an offense has been committed;
> (2) states facts sufficient to support probable cause to believe that evidence, contraband, or persons connected with the offense may be found;
> (3) particularly describes the place, object, or persons to be searched; and
> (4) particularly describes who or what is to be seized.

Section 46-5-221, MCA.  The sufficiency of a warrant is assessed on a case-by-case basis to determine whether any alleged defect in the warrant application is sufficient to affect the substantial rights of the accused. *Muir v. Bilderback*, 2015 MT 180, ¶ 11, 379 Mont. 459, 353 P.3d 473 (citing *State v. West*, 1998 MT 282, ¶ 8, 291 Mont. 435, 968 P.2d 289).  An application for a search warrant must state facts sufficient to show probable cause for its issuance.  Section 46-5-221, MCA; *State v. Reesman,* 2000 MT 243, ¶ 24, 301 Mont. 408, 10 P.3d 83.  This Court has adopted the "totality of the circumstances test" to evaluate the existence of probable cause in a search warrant application. *Reesman,* ¶ 24 (citing *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).  Under the totality of circumstances test, a judicial officer must make a "practical, common sense determination, given all the evidence contained in the application for a search warrant, whether a fair probability exists that contraband or evidence of a crime

5

will be found in a particular place." *State v. Kasparek*, 2016 MT 163, ¶ 8, 384 Mont. 56, 375 P.3d 372. The judicial officer's "determination that probable cause exists is entitled to great deference and every reasonable inference possible [must] be drawn to support that determination of probable cause." *Kasparek*, ¶ 8.

¶11 McDanal concedes the facts in the warrant application may have indicated evidence of drugs in her urine on November 3, but argues that when the warrant was issued those same facts were too stale to show probable cause. Simply, McDanal argues the evanescent character of methamphetamine in urine required the search warrant application to include specifically why the drug would be in McDanal's urine at the time the warrant was issued.

¶12 Whether an application for a search warrant contains stale information depends on the nature of the property sought and activity in issue. *State v. Tackitt*, 2003 MT 81, ¶ 39, 315 Mont. 59, 67 P.3d 295. The determination of staleness "cannot be resolved by a mechanical reference to the number of days between the facts relied upon in the affidavit and the time the warrant is issued." *State v. Rinehart*, 262 Mont. 204, 213, 864 P.2d 1219, 1224 (1993). Because the staleness of facts in a search warrant application "cannot be resolved by a mechanical reference," a judicial officer must make a "practical, common sense determination" of whether a fair probability exists that evidence of a crime will be found in a specific place. *Rinehart*, 262 Mont. at 213, 864 P.2d at 1224; *Kasparek*, ¶ 8. It is true the presence of drugs in a person's body is evanescent and will eventually dissipate. However, common sense is not so evanescent.

6

¶13 In this case, the District Court made a practical, common sense determination when it issued the search warrant. Based on the totality of the circumstances the District Court properly concluded the warrant application stated facts sufficient to support probable cause and those facts were not stale. This determination is entitled to great deference. *Muir*, ¶ 12. We conclude the District Court did not err in denying McDanal's motion to suppress the evidence of methamphetamine in her urine pursuant to the search warrant.

¶14 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶15 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ JIM RICE