FILED

03/26/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0326

DA 23-0326

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 65N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

ERIC BOUDETTE,

     Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. BDC-2022-351
Honorable Michael F. McMahon, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

         Eric Boudette, Self-Represented, Townsend, Montana

     For Appellee:

         Austin Knudsen, Montana Attorney General, Brad Fjeldheim, Assistant Attorney General, Helena, Montana

         Kevin Downs, Lewis and Clark County Attorney, Charles Lane, Deputy County Attorney, Helena, Montana

Submitted on Briefs: February 7, 2024

Decided: March 26, 2024

Filed:

_____

Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Following a May 31, 2022 jury trial, Eric Boudette was convicted of Driving Under the Influence of Alcohol, First Offense, in violation of § 61-8-401, MCA (recodified under § 61-8-1007, MCA).

¶3 Boudette appealed the Justice Court judgment, arguing his motion to dismiss for prosecutorial misconduct was improperly denied. Boudette also argued his motion for a new trial was improperly denied because his arrest constituted an unlawful seizure, the Justice Court lacked jurisdiction to try the case, and the statutory speedy trial deadline had expired by the time his trial was held.

¶4 The District Court affirmed the Justice Court on April 13, 2023. Boudette now appeals the District Court's decision based on the same legal theories.

¶5 We affirm.

¶6 On February 14, 2021, Montana Highway Patrol Troopers Amanda Villa and Lucas Hurl responded to a report of a vehicle in a roadside ditch at mile marker 16 on Canyon Ferry Road, Broadwater County, along the east side of Canyon Ferry Lake. When Villa arrived on the scene at approximately 1:00 a.m., it was 20 degrees below zero and snowy.

¶7 Villa noticed tire tracks in the snow that traveled "quite a ways leading up to a vehicle that was stuck in a deep culvert," indicating the vehicle had been traveling southbound.[1] The two individuals who reported the accident were also at the scene, parked along the road in their truck. After first speaking with them, Villa approached Boudette's car.

¶8 Boudette was not responsive when Villa first approached the car, so Villa opened the car door and began speaking with Boudette to assess his wellbeing. Villa could smell alcohol in the car and noticed a red plastic cup in the cup holder. Boudette's eyes were bloodshot; his speech was slow, slurred, and confused; and "most of [their] interaction conversation-wise was only one to two word answers." Villa explained that she was only there to help him and pleaded with Boudette to go and warm up in the back of her patrol car and let her take him home. Boudette was generally uncooperative, and repeatedly asked Villa to leave him alone.

¶9 After Boudette eventually exited his car and climbed out of the ditch, Villa elected not to perform field sobriety tests due to the inclement weather and Boudette's general lack of cooperation.

¶10 Villa then drove Boudette to the Lewis and Clark County jail, where she read him an implied consent advisory and asked for a blood draw. Boudette refused Villa and requested an independent blood draw. Villa requested that Boudette be released as soon as possible so that he could go to have an independent blood draw performed. A booking

_____

[1] Villa also testified that the following day, Boudette's front bumper was discovered "an eighth of a mile or so" north of the vehicle's stopping point in the ditch.

sheet indicates Boudette was booked at 4:03 a.m., but the record does not indicate when he was released.

¶11 We review a district court's appellate decisions under the same standards of review that would have been applied if the case had originally been appealed to this court. *City of Helena v. Grove*, 2017 MT 111, ¶ 4, 387 Mont. 378, 394 P.3d 189 (citations omitted).

¶12 A trial court's findings of fact are reviewed for clear error, and its discretionary rulings are reviewed for an abuse of discretion. *State v. Davis*, 2016 MT 206, ¶ 5, 384 Mont. 388, 378 P.3d 1192 (citations omitted). "A finding is clearly erroneous if it is not supported by substantial evidence, if the lower court has misapprehended the effect of the evidence, or if our review of the record leaves us with the firm conviction that a mistake has been made." *City of Missoula v. Metz*, 2019 MT 264, ¶ 12, 397 Mont. 467, 451 P.3d 530.

¶13 Questions of law, including alleged constitutional violations, are reviewed de novo. *State v. Johnson*, 2000 MT 290, ¶ 13, 302 Mont. 265, 14 P.3d 480 (citation omitted); *State v. Covington*, 2012 MT 31, ¶ 13, 364 Mont. 118, 272 P.3d 43 (citation omitted). Likewise, allegations of prosecutorial misconduct are reviewed de novo, "considering the prosecutor's conduct in the context of the entire proceeding." *State v. Dobrowski*, 2016 MT 261, ¶ 8, 385 Mont. 179, 382 P.3d 490 (citation omitted).

*Jurisdiction*

¶14 Boudette first argues he was improperly charged in Lewis and Clark County because Trooper Villa found and arrested him in Broadwater County. The State counters that it

does not matter where Boudette was found, because evidence indicated he was driving under the influence in both counties.

¶15 "In all criminal prosecutions, the charge must be filed in the county where the offense was committed unless otherwise provided by law." Section 46-3-110(1), MCA. "[I]f the county in which the offense was committed cannot be readily determined, the offender may be charged in any county in which it appears that an element of the offense occurred." Section 46-3-114(1), MCA.

¶16 Villa testified that Boudette was driving southbound from Lewis and Clark County on Canyon Ferry Road when he left the roadway, drove into a ditch, and came to a stop in Broadwater County. The tire tracks and bumper that Boudette's vehicle left behind it in the ditch corroborate that conclusion. Because Boudette was driving under the influence of alcohol in both counties, he could have lawfully been charged in either one. Section 46-3-114(1), MCA.

¶17 We are not persuaded that the Justice Court clearly erred in weighing the evidence, nor that it incorrectly applied the facts to the law. *Metz*, ¶ 12; *Johnson*, ¶ 13.

*Community Caretaker Doctrine*

¶18 Boudette next contends his arrest was unlawful because Villa did not have probable cause to enter his vehicle. The State responds that Villa was acting pursuant to her caretaker duties when she entered Boudette's vehicle, and that she had probable cause to arrest him once she observed obvious signs that he was impaired.

¶19 In addition to enforcing the law, peace officers have a duty to respond when a citizen is in peril or in need of assistance. *State v. Lovegren*, 2002 MT 153, ¶ 20, 310 Mont. 358,

5

51 P.3d 471. "The community caretaker doctrine is operative where law enforcement initiates contact with a citizen, not to investigate the commission of a crime, but to investigate a potential vehicle accident or otherwise to ensure the safety of citizens." *Estate of Frazier v. Miller*, 2021 MT 85, ¶ 16, 404 Mont. 1, 484 P.3d 912 (internal quotation omitted). We have recognized that an arrest may be lawful when "a police officer's investigation of a public safety concern morphs into a seizure or an arrest because of an escalation of events which develop after the initial inquiry." *State v. Nelson*, 2004 MT 13, ¶ 6, 319 Mont. 250, 84 P.3d 25.

¶20 A peace officer's caretaker duties are often in tension with Montana citizens' rights to privacy and their protections against unreasonable searches and seizures. Mont. Const. art. II, §§ 10 and 11; U.S. Const. amend. IV. We thus apply a three-part test to determine whether actions taken pursuant to the community caretaker doctrine are constitutional:

> First, as long as there are objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or is in peril, then that officer has the right to stop and investigate. Second, if the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Third, once, however, the officer is assured that the citizen is not in peril or is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating not only the protections provided by the Fourth Amendment, but more importantly, those greater guarantees afforded under Article II, Sections 10 and 11 of the Montana Constitution as interpreted in this Court's decisions.

*Lovegren*, ¶ 25.

¶21 Here, Villa acted on specific, articulable facts from which any officer would suspect Boudette needed help. *Lovegren*, ¶ 25. Regardless of whether Boudette felt "fine," the inside of the car smelled of alcohol, and Boudette was stuck in a rural ditch in the middle

6

of the night when it was 20 degrees below zero outside. An experienced officer would have evaluated the circumstances and determined Boudette needed help.

¶22 Further, Villa's actions were appropriate to mitigate the risk of harm to Boudette and others. *Lovegren*, ¶ 25. Boudette's vehicle was stuck in the ditch below a steep embankment, and Villa testified that it would not have made it back to the roadway without being towed. There is no evidence indicating that Boudette could have stayed warm in his vehicle for the remainder of the night, let alone extricate his car from the ditch had he tried. Boudette would thus have either remained in his car or wound up walking down the road at some point to find help. Villa made a reasonable calculation that the risk of harm to Boudette and other motorists on Canyon Ferry Road would be best mitigated by getting him safely into the back of her patrol car.

¶23 Finally, although Boudette's constitutional rights were implicated the moment he entered Villa's patrol car, probable cause had ripened by that point. "[P]robable cause is established if the facts and circumstances within an officer's personal knowledge, or related to the officer by a reliable source, are sufficient to warrant a reasonable person to believe that another person is committing or has committed an offense." *State v. Williamson*, 1998 MT 199, ¶ 21, 290 Mont. 321, 965 P.2d 231. When she opened his car door, Villa observed that Boudette showed obvious signs of impairment and the car smelled of alcohol. Further, before he got into the patrol car, Boudette refused to perform field sobriety tests. Villa reasonably acted upon her caretaker duties when she opened Boudette's car door, and she lawfully acted on probable cause when she detained Boudette and transported him to the Lewis and Clark County jail.

7

*Prosecutorial Misconduct*

¶24 Boudette contends he was denied a fair and impartial trial because of underlying prosecutorial misconduct, claiming the State suborned perjury by eliciting Villa's testimony that he refused a blood draw. Boudette's argument is premised on the fact that he never expressly denied the blood draw. Rather, Boudette requested an independent blood draw, which he argues the State effectively denied him when he was held in jail so long that a blood draw would not have evidenced impairment (or a lack thereof) at the time he was detained.

¶25 "[A] peace officer may not unreasonably impede the person's right to obtain an independent blood test. The officer may but has no duty to transport the person to a medical facility or otherwise assist the person in obtaining the test." Section 61-8-1019(2), MCA.

¶26 There is no evidence indicating Villa committed perjury, given Boudette *did* refuse the blood draw by demanding it be performed independently and despite being read an implied consent advisory. Further, Boudette did not present any evidence at trial supporting his allegations that the State unreasonably impeded him from obtaining an independent blood test. Villa testified that she requested an expedited release, although she is not aware of the time Boudette was actually released. There is no record evidence—other than Boudette's assertions at trial—suggesting Boudette was held until the afternoon. Regardless, the State was under no obligation to facilitate Boudette's independent blood draw before or after his release.

¶27 We are not persuaded that perjury occurred or that Boudette was otherwise denied a fair and impartial trial.

*Speedy Trial*

¶28    Finally, Boudette avers he was denied his statutory right to a speedy trial because the Justice Court trial was held beyond the statutory six-month deadline for misdemeanor charges.

¶29    Misdemeanor charges will be dismissed pursuant to § 46-13-401(2), MCA, "only if two conditions are met: (1) the defendant has not asked for a postponement; and (2) the State has not shown good cause for the delay." *City of Helena v. Roan*, 2010 MT 29, ¶ 9, 355 Mont. 172, 226 P.3d 601 (citations and internal quotation omitted).

¶30    Boudette filed a continuance request on June 18, 2021, asking for more time for discovery.  Boudette was also advised that a continuance amounted to a waiver of his statutory speedy trial right.  Boudette, therefore, was not denied his statutory right to a speedy trial because he had already waived it by the time his trial was held.

¶31    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶32    Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR
/S/ JIM RICE